U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2010 JUL -7 PM 12:06

BY
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Zack McCain,
   Plaintiff,

v.                Case No. 5:09-cv-165-cr

Hermann Law Office; Michael O. Hermann;
Joe Walsh; Beth DeBernardi;
Michael Kennedy; Yellow Book Sales and
Distribution Company, Inc.,

   Defendants.

## ORDER GRANTING DEFENDANTS KENNEDY'S AND DEBERNARDI'S MOTION TO DISMISS
(Doc. 8)

This matter came before the court on April 7, 2010 for a hearing on the Motion to Dismiss filed by Defendants Michael Kennedy and Beth DeBernardi. (Doc. 8.) Plaintiff, Zack McCain, is self-represented. Defendants Kennedy and DeBernardi are represented by Assistant Attorney General Jana M. Brown and Assistant Attorney General Megan J. Shafritz of the Office of the Attorney General for the State of Vermont.

In their Fed. R. Civ. P. 12(b)(6) motion, Defendants Kennedy and DeBernardi seek dismissal of Plaintiff's constitutional claims against them in their official capacities. They assert such claims are barred by the Eleventh Amendment, and that the doctrines of absolute and qualified immunity require their dismissal.

### Factual Background

On February 5, 2009, Plaintiff submitted a complaint to the Vermont Professional Responsibility Board against Michael O. Hermann, Esq., an attorney hired by Plaintiff to conduct a patent search. Plaintiff alleged that Attorney Hermann misrepresented himself as a patent attorney and failed to complete the work he was paid to perform.

Defendant Kennedy is the Disciplinary Counsel and Defendant DeBernardi is the Deputy Disciplinary Counsel of the Professional Responsibility Board's Office of Disciplinary Counsel (the "Board"). The scope of Defendants Kennedy's and DeBernardi's duties is delineated by Vermont Supreme Court's Administrative Order 9 which provides:

> Counsel may close or dismiss complaints which, in counsel's judgment, do not require either formal investigation by disciplinary counsel or referral to an assistance panel. In such cases, counsel shall inform the complainant in writing of the decision and the reasons therefore, and shall notify the complainant that he or she may seek review from the Board chair.

A.O. 9, Rule 10(D).

Administrative Order 9 further provides that Disciplinary Counsel is empowered to "administer the dispute resolution program; respond to inquiries from lawyers regarding ethics and law practice . . . provide administrative and legal support to the Board [of Professional Responsibility] and assistance panels; and perform such other functions as are necessary to accomplish the goals of the program." A.O. 9, Rule 3(B)(1).

On February 13, 2009, Defendant Kennedy sent Plaintiff a letter stating that he had screened his complaint against Attorney Hermann and determined that it merited further investigation. Defendant Kennedy stated that Plaintiff was not a party to the investigation and that the investigation would be "limited to whether or not action should be taken against Attorney Hermann's license." To the extent Plaintiff had other questions or issues at stake, Defendant Kennedy advised Plaintiff to contact an attorney for legal advice. Defendant Kennedy further advised that: "Upon the conclusion of the investigation, I will do one of three things: (1) recommend that formal disciplinary charges be filed; (2) refer the matter to an Assistance Panel for non-disciplinary resolution; or (3) dismiss your complaint."

On May 13, 2009, Defendant DeBernardi sent Plaintiff a letter informing him that the Office of Disciplinary Counsel had reviewed his complaint and elected to refer the

complaint to an Assistance Panel[1] for further investigation. Plaintiff and Attorney Hermann both agreed to attend the Assistance Panel's meeting scheduled for June 12, 2009.

Before meeting with the Assistance Panel, on or about May 22, 2009, Plaintiff sent a second document entitled "Citizen Complaint" to the Board, noting that "[t]his issue arose from a[] current case-PRB File No. 2009.122, Complaint about Mich[ae]l Hermann, which is pending resolution in front [of] the non-Disciplinary Board Panel." This second complaint addressed the Board's proceedings to date with regard to Plaintiff's first complaint and identified Plaintiff's concerns regarding them. As an additional grievance, Plaintiff alleged that Attorney Hermann had returned all of Plaintiff's documents "except the one in particular" which is apparently some form of drawing of Plaintiff's invention. In his second complaint, Plaintiff asserted that "the evidence reflects that Mr. Hermann has committed an additional violation arising out [of] your office['s] investigation concerning my initial complaint against him." Defendant DeBernardi added this second complaint to Attorney Hermann's existing file.

Thereafter, Plaintiff and Attorney Hermann met with the Assistance Panel. Notably, Plaintiff does not claim that he was precluded from providing facts and arguments regarding his second complaint to the Assistance Panel, nor does he allege that

---

[1] Rule 4(B)(1) of Administrative Order 9 outlines the Assistance Panel's powers and duties:
> The assistance panel shall review all complaints referred to it by bar counsel or disciplinary counsel and provide a process to resolve such complaints. The panel may meet with the person filing the complaint and the attorney who is the subject thereof, and, with the concurrence of the attorney, may impose conditions as an alternative to discipline. Any terms or conditions shall be stated in writing, and may include, but shall not be limited to, participation in law office management training, continuing legal education, psychological counseling, substance abuse programs, and referral to fee arbitration. The panel may transfer any matter to disciplinary counsel which, in its view, is more appropriate for disciplinary proceedings.

3

the Assistance Panel was unaware of his second complaint. The Assistance Panel subsequently decided upon a resolution and communicated that resolution to Plaintiff and Attorney Hermann.

On or about June 26, 2009, Plaintiff asked the Board's administrative assistant, Cathy Janvier, why he had not received any acknowledgment of his second complaint against Attorney Hermann. Ms. Janvier told Plaintiff that Defendant DeBernardi had added the second letter to the original complaint file.

On September 16, 2009, Plaintiff filed the instant lawsuit alleging, among other claims,[2] that Defendants DeBernardi and Kennedy had violated his constitutional rights in their processing of his second letter of complaint. Plaintiff describes the claims set forth in his Third Amended Complaint as follows:

> This is a Civil Rights Action being commence[d] by [a] Pro Se litigant (in his inventor and investor capacities) under Title 15 United States Codes, Section 1125(a)(1), of sub-chapter I- (Section 43 of the Lanham Act) of the False designations of origins and false descriptions forbidden, section of the United States Trademark Act, and Title 42 U.S.C. 1983, alleging provisions of the Act, and several mandates of the United States Constitution w[ere] violated by the defendants. Plaintiff seeks damages, and declaratory relief. Plaintiff also alleges a State Tort for Breach Legal of Duty.

(Doc. 28 at 1). The Third Amended Complaint asserts that all claims against Defendants Kennedy and DeBernardi arise out of their "administrative or investigative capacity." Paragraphs 81-120 of the Third Amended Complaint set forth the factual basis of Plaintiff's claims against Defendants Kennedy and DeBernardi, asserting, in essence, that they had an obligation to process his second complaint as a separate matter and to respond to it in accordance with Administrative Order 9's provisions governing new complaints.

With regard to Defendant Kennedy, Plaintiff further asserts this defendant violated his right to petition the Government for redress of a grievance and violated the Separation

---

[2] The court does not address herein Plaintiff's claims against other defendants.

4

of Powers Doctrine. With regard to both Defendants Kennedy and DeBernardi, Plaintiff asserts a violation of his right to procedural and substantive due process and an Equal Protection claim, alleging that he was treated differently than "white or non white citizens similarly situated."

Plaintiff seeks compensatory and punitive damages against Defendants Kennedy and DeBernardi "for the mental anguish, and emotional pain" he allegedly sustained as a result of their actions. The Third Amended Complaint also seeks a declaratory judgment that Defendants Kennedy and DeBernardi violated Plaintiff's rights under the procedural Due Process Clause of the Fourteenth Amendment to the United States Constitution and that Defendant Kennedy performed a legislative act which encroached upon the Separation of Powers Doctrine.

## Conclusions of Law and Analysis

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants Kennedy and DeBernardi seek dismissal of Plaintiff's Third Amended Complaint for failure to state a claim. Under *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), to survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). A plaintiff's factual allegations are accepted as true and all reasonable inferences are drawn in his or her favor. *Id.* at 1949. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice[]" and "only a complaint that states a plausible claim for relief [will survive] a motion to dismiss." *Id.* at 1950.

### A. *Standing to Assert Claims Against Defendants Kennedy and DeBernardi.*

Before analyzing Defendants Kennedy's and DeBernardi's cited grounds for dismissal, the court addresses the threshold question of whether Plaintiff has standing to assert constitutional claims against these defendants. For standing to exist, the plaintiff

5

must "allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright*, 468 U.S. 737, 751 (1984). In addition, the plaintiff must sustain an "injury in fact" that is "distinct and palpable." *Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Pacific Capital Bank, N.A. v. Connecticut,* 542 F.3d 341, 350 (2d Cir. 2008) ("[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical[.]") (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Services, Inc.*, 528 U.S. 167, 180-81 (2000)).

In this case, Plaintiff claims he suffered "mental anguish and emotional pain" as a result of Defendants Kennedy's and DeBernardi's processing of his second complaint. Such a claim cannot survive *Iqbal/Twombly*'s "plausibility" requirements. *See Iqbal*, 129 S. Ct. at 1949 (a claim lacks facial plausibility when it not supported by facts that would allow a court to draw a reasonable inference that the defendant's alleged misconduct caused the injury claimed); *see also Gest v. Bradbury*, 443 F.3d 1177, 1182 (9th Cir. 2006) (affirming dismissal of a § 1983 claim because "feelings of frustration stemming from the signature collectors' disagreement with the Secretary of State's actions . . . are not sufficiently concrete to constitute the 'injury-in-fact' required for Article III standing.").

Even when Plaintiff's claim that he suffered mental anguish and emotional pain as a result of the handling of his second complaint is accepted as both true and plausible, any injury Plaintiff suffered arose out of a proceeding in which he had no judicially cognizable interest. As Defendant Kennedy made clear to Plaintiff from the onset, Plaintiff was neither a party to the disciplinary proceeding, nor was it commenced on his behalf. The United States Supreme Court has repeatedly held that "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). For this reason, "a citizen lacks standing to

contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution." *Id.*; *see also Leeke v. Timmerman*, 454 U.S. 83, 86-87 (1981) (dismissing § 1983 suit alleging improper interference with plaintiffs' attempt to have an arrest warrant issued against persons who allegedly beat them on the grounds that plaintiffs had no right to the prosecution of another). This principle applies here. Plaintiff has no right, constitutional or otherwise, to compel the Board and Defendants Kennedy and DeBernardi to prosecute his claims against Attorney Hermann. *A fortiori*, Plaintiff has no right to compel prosecution of his second complaint in the manner he deems appropriate.

Plaintiff also had no procedural or substantive due process rights at stake in Attorney Hermann's disciplinary proceedings. "The fact is that the only one who stands to suffer direct injury in a disciplinary proceeding is the lawyer involved." *Doyle v. Oklahoma Bar Ass'n*, 998 F.2d 1559, 1567 (10th Cir. 1993). As a result, a person filing a disciplinary complaint "has no more standing to insert himself substantively into a license-based discipline system than he has to compel the *issuance* of a license." *Id.* (emphasis in the original). Moreover, "[t]he only person entitled to the due process which the Rules clearly provide is the lawyer who may be subject to license-related sanction." *Id.* at 1570 (citing *Bell v. Burson*, 402 U.S. 535, 539 (1971)). In contrast, Plaintiff's "mere expectation of receiving a state afforded process does not itself create an independent liberty interest protected by the Due Process Clause." *Doyle*, 998 F.2d at 1570; *West Farms Assoc. v. State Traffic Comm'n of the State of Conn.*, 951 F.2d 469, 472 (2d Cir. 1991) (dismissal of claims held appropriate because state law providing parties with the right to intervene in licensing proceedings did not confer a protected property interest as the right to be heard by a state agency is generalized to all citizens and "[s]uch universal benefits are not property interests protected by the Due Process Clause.").

Plaintiff's claim that Administrative Order 9, as implemented by Defendant

Kennedy, violates his right to petition the government for a redress of grievances, as guaranteed by the First Amendment, is equally unavailing. Under Rule 12(A) of the Order, records of all communications and proceedings are confidential prior to the filing of formal disciplinary proceedings. Plaintiff is thus not entitled to a record of the proceedings in order to pursue his claims in this court or elsewhere. *See West Farms*, 951 F.2d at 474 ("there is no legal foundation for [plaintiff's] claim that [the] right of access [to courts] obligates a state agency . . . to keep a detailed public record of all of its proceedings for later use by a reviewing court.").

Because Plaintiff had no constitutionally protected rights at stake in the disciplinary proceedings against Attorney Hermann, he has no standing to now assert that those alleged rights were violated. Dismissal of Plaintiff's claim for lack of standing is therefore required. *See Doyle*, 998 F.2d at 1566, 1571 (dismissing complaint for lack of standing and finding "utterly baseless, and patently inconsistent with a massive body of authority" Australian barrister's civil rights claim against Oklahoma Bar Association, its executive director, general counsel, assistant general counsel, and two members of the Professional Responsibility Commission relating to their disposition of his grievance against his ex-wife's attorney).

Notwithstanding the court's conclusion that Plaintiff lacks standing and has failed to state a claim that will survive *Iqbal/Twombly* scrutiny, the court proceeds to examine Defendants Kennedy's and DeBernardi's grounds for their Rule 12(b)(6) motion to dismiss.

### B. *The Eleventh Amendment Bars Plaintiff's Claim for Damages.*

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The United States Supreme Court has explained that, "[w]hile the Amendment by its terms does not bar suits against a State by

its own citizens, this Court has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974) (citations omitted). "It is also well established that even though a State is not named a party to the action, the suit may nonetheless be barred by the Eleventh Amendment." *Id.* at 663.

In this case, Plaintiff has not brought an action against the State of Vermont but has, instead, brought claims against Defendants Kennedy and DeBernardi as state actors in their administrative and investigative capacities. This, however, is a distinction without a difference. "[A]n official-capacity suit against a state officer 'is not a suit against the official but rather is a suit against the official's office. As such it is no different from a suit against the State itself.'" *Hafer v. Melo*, 502 U.S. 21, 26 (1991) (quoting *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)). "When a suit names state officials as defendants and seeks to recover money, the Eleventh Amendment will bar the action if the state is the real, substantial party in interest." *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997) (quotation and citation omitted). The Eleventh Amendment thus "bars suits whose direct outcome will diminish the public fisc through the award of retroactive damages." *In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 374 (2d Cir. 2005). Claims for compensatory and punitive damages against disciplinary counsel acting in their administrative capacities fall within this category. *See Edelman*, 415 U.S. at 668 ("an award of damages . . . will to a virtual certainty be paid from state funds and not from the pockets of the individual state officials who were defendants in the action."); *see also De Jesus-Keolamphu v. Village of Pelham Manor*, 999 F. Supp. 556, 564 (S.D.N.Y. 1998) (granting motion to dismiss on Eleventh Amendment grounds because plaintiffs were seeking retroactive monetary relief against state defendants in their official capacities). Here, there can be little doubt that any damages Plaintiff recovers against Defendants Kennedy and DeBernardi will be paid from the public fisc. The Eleventh Amendment bars Plaintiff from bringing such claims in federal

court. Plaintiff's claims for monetary damages against Defendants Kennedy and DeBernardi must therefore be dismissed.

### C. *Plaintiff's Requests for Declaratory Relief Seek an Advisory Opinion.*

In addition to seeking compensatory and punitive damages, Plaintiff's Third Amended Complaint requests declaratory relief. In essence, Plaintiff requests a judicial declaration that Defendants Kennedy and DeBernardi have violated his constitutional rights. With regard to Defendant Kennedy, Plaintiff seeks a further declaration that he has violated the Separation of Powers doctrine by undertaking a legislative act. The Declaratory Judgment Act provides in relevant part that:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a). In the instant case, were the court to issue the Plaintiff's requested declaration, it would not alter the parties' rights, interests, and obligations vis-a-vis one another. It would also not provide Plaintiff with a remedy. Rather, the declaration would be merely an advisory opinion that neither redressed an injury, nor adjudicated a case or controversy. The court has no authority to issue a declaratory judgment on this basis. *See United Public Workers of America (C.I.O.) v. Mitchell,* 330 U.S. 75, 89 (1947) ("As is well known the federal courts established pursuant to Article III of the Constitution do not render advisory opinions. For adjudication of constitutional issues 'concrete legal issues, presented in actual cases, not abstractions' are requisite.") (citations omitted); *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 142 (2007) ("Because neither [party] had a cause of action, [plaintiff's] prayer for declaratory relief can be reasonably understood only as seeking an advisory opinion about an affirmative defense it might use in some future litigation."). Accordingly, dismissal of Plaintiff's requests for declaratory

relief must also be granted.

### D. *Defendants' Request for Dismissal on Immunity Grounds.*

Defendants Kennedy and DeBernardi assert that they are immune from suit for actions undertaken in their investigative and administrative capacities. Plaintiff counters that their actions with respect to his second complaint were purely ministerial and no immunity of any kind is warranted. In addition, Plaintiff claims that Defendants Kennedy and DeBernardi violated a court order, Administrative Order 9, in failing to perform to their duties and that no immunity exists for this alleged violation.

Having determined that Plaintiff's claims against Defendants Kennedy and DeBernardi must be dismissed on other grounds, the court addresses the issue of immunity in a relatively cursory manner. In actuality, the doctrine of immunity has no application in this case as there is no factual or legal basis for finding a violation of Plaintiff's constitutional rights arising from the manner in which Attorney Hermann's disciplinary proceedings were conducted. *See Walczyk v. Rio*, 496 F.3d 139, 154 (2d Cir. 2007) ("where there is no viable constitutional claim, defendants have no need of an immunity shield.") (internal citations omitted). The court nonetheless observes that numerous courts have found absolute immunity protects state officials even where the party seeking redress has standing to bring the claim. *See, e.g., Walden v. Wishengrad*, 745 F.2d 149, 152 (2d Cir. 1984) (attorney who initiated and prosecuted child protective orders for New York's social services department was entitled to "absolute immunity for claims arising out of the performance of her duties."); *Simons v. Bellinger*, 643 F.2d 774, 780 (D.C. Cir. 1980) (state bar counsel's decision to investigate a complaint "is well-recognized as a determination which is comparable to judicial decision making" and is entitled to absolute immunity); *Kissell v. Breskow,* 579 F.2d 425 (7th Cir. 1978) (absolute immunity extended to Executive Secretary of the Disciplinary Commission of Indiana); *Clark v. State of Washington*, 366 F.2d 678 (9th Cir. 1966) (quasi-judicial absolute immunity given to members of the Washington State Bar Association); *Johnson v. Board of Bar Overseers of*

*Massachusetts*, 324 F. Supp. 2d 276 (D. Mass. 2004) (extending absolute immunity to Bar Counsel members acting in their quasi-judicial capacity).

The fact that a court order governs Defendants Kennedy's and DeBernardi's duties, and Plaintiff claims they violated it, does not render immunity unavailable. *See Pearson v. Callahan*, __ U.S. ___, 129 S. Ct. 808, 815 (2009) (qualified immunity protects government officials from lawsuits over errors made while reasonably performing their duties, whether resulting from "a mistake of law, a mistake of fact, or a mistake of mixed questions of law and fact.")(quotation and citation omitted). Plaintiff's further argument that Defendants Kennedy's and DeBernardi's duties with regard to the second complaint were purely ministerial fares no better. Not only did Defendant DeBernardi exercise discretion in deciding to add Plaintiff's second complaint to Attorney Hermann's existing file rather than treating it as a new complaint, but purely ministerial duties may give rise to immunity provided they are part of the official's duties.

For example, in *Eston v. Van Bolt*, 728 F. Supp. 1336 (E.D. Mich. 1990), the plaintiff claimed that members of the state bar's disciplinary board failed to give him adequate notice of the effective date of his thirty-day attorney suspension and that because of that failure the plaintiff was suspended for an additional three years. The court held that the defendants' failure to notify the plaintiff, arguably a purely ministerial duty, qualified for immunity:

> Defendants . . . allegedly failed to give plaintiff "notice of his suspension" and therefore, denied plaintiff his right to procedural due process. As members of the Attorney Discipline Board, defendants were performing quasi-judicial functions delegated to them by the Michigan Supreme Court. As the adjudicative arm of the Supreme Court, defendants duties pertained to proceedings before the Attorney Discipline Board. Defendants' duties regarding preparation and distribution of notices in actions involving the Board are inherently judicial by nature.

*Id.* at 1340. The court concluded that, "[p]ublic policy requires absolute immunity for all persons - governmental or otherwise - who are integral parts of the judicial process." *Id.* at

1339 (citation omitted).

Similarly, in *Morrison v. Jones*, 607 F.2d 1269, 1273 (9th Cir. 1979), the Ninth Circuit extended absolute immunity to a court clerk charged with failing to notify the plaintiff that her son was being sent back to Germany to live with his grandmother. The Ninth Circuit upheld the district court's granting of summary judgment in favor of the clerk on the basis that the "challenged activities [were] an 'integral part of the judicial process.'" *Id.* (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). The court found that even if the clerk failed to perform a ministerial duty, his actions were protected under quasi-judicial immunity. *Id.* "At best, [plaintiff] has charged him with some kind of responsibility for her failure to receive notice of the . . . order. His failure, if any, to perform a ministerial duty which was part of judicial process is also clothed with quasi-judicial immunity." *Id.* (citing *Denman v. Leedy*, 479 F.2d 1097 (6th Cir. 1973); *Smith v. Rosenbaum*, 460 F.2d 1019 (3d Cir. 1972)).

Application of the foregoing principles to the instant case reveals that had Plaintiff asserted viable constitutional claims against Defendants Kennedy and DeBernardi, the doctrine of immunity would have required their dismissal.

For the reasons stated above, Defendants Kennedy's and DeBernardi's Motion to Dismiss is GRANTED and all claims against Defendants Kennedy and DeBernardi are hereby DISMISSED.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 7th day of July, 2010.

Christina Reiss
United States District Court Judge